### O. S. CUTLER v. THE TERRITORY OF OKLAHOMA.

(Filed Feb. 11, 1899.)

1. PERJURY—*What Indictment for Must Show.* An indictment for perjury need not set out the facts from which it will be made to appear that the alleged false testimony upon which the charge is predicated was material. It is sufficient if the express averment is made that said testimony was material to the question in issue.

2. CHANGE OF VENUE—*Granting of, Discretionary.* The granting of a change of venue from the county is, by statute, made discretionary

with the court; and an appellate court will not reverse the ruling of the trial court denying an application of the defendant for change of venue, unless it is made to clearly appear that there has been such an abuse of discretion as to amount practically to a denial of justice.

3. SAME—*Review of Ruling on Appeal.* The ruling upon an application for change of venue cannot be reviewed in the supreme court until after final judgment in the trial court, and on appeal from such judgment.

4. EVIDENCE—*Best and Secondary—Rule Applied.* The rule of evidence requiring that the best evidence shall be produced, to the exclusion of secondary and hearsay, is not violated by permitting the official court stenographer to read from his notes the testimony of a witness in a former trial, taken and recorded by him at the time and sworn to by him to be correct, even though he testifies that he has no independent recollection of such testimony, and cannot refresh his memory from such notes.

5. SAME—*Rule Modified.* The old application of the rule requiring the best evidence, which treated the recollection of a person who was present and heard the testimony of a witness as the best medium for reproducing such testimony, should be modified to meet the changed conditions caused by the progress and advancement made in science, art, skill, and mechanism; and the notes or longhand manuscript of a skilled and impartial stenographer should be treated as more accurate and reliable than to trust to the imperfections of human recollection.

6. INDICTMENT FOR PERJURY—*Proof—Variance.* Where an indictment for perjury specifically avers that the defendant was sworn before a certain person and a particular officer, such allegation is matter of substance, and must be proved as laid; and proof that some other person or officer administered the oath is a fatal variance.

7. EVIDENCE—*Sufficiency.* Proof that an oath was administered by the clerk or some other officer of the court in the presence of the court is sufficient to sustain an allegation that the person was sworn by the court, or in court.

8. CRIMINAL LAW—*Statute Interpreted.* Section 5234, Statutes 1893, was not intended to change rules of pleading or practice, but announces a rule which had been adopted by some courts previous to its enactment, and only applies to indictments where the allegation is made generally that the accused person was sworn before the court, or in the court, and was not intended to change the rule in case where a specific averment is made setting out the name of the person and officer before whom the oath was taken.

9. INSTRUCTION—*Error.* Where an indictment for perjury contains the allegation that the defendant was duly sworn by John H. Havighorst, clerk of the district court, it is error to instruct the jury that it is sufficient proof, if the defendant was sworn by any other officer of the court.

(Syllabus by the Court.)

*Error from the District Court of Pawnee County; before A. G. C. Bierer, District Judge.*

*B. S. McGuire* and *C. R. Buckner & Son,* for plaintiff in error.

*Harper S. Cunningham, Attorney General,* for defendant in error.

O. S. Cutler was convicted of perjury, and appeals. Reversed.

Opinion of the court by

BURFORD, C. J.: The plaintiff in error was convicted of the crime of perjury, and sentenced to a term of ten years' imprisonment. He prosecuted this appeal to reverse that judgment. There are a number of assignments of error, but we need notice only two, as all are embraced in these two, viz. the court erred in overruling the demurrer to the indictment, and that the court erred in overruling the motion for a new trial.

We have examined the indictment, and find that it contains all the material averments necessary to constitute a good charge of perjury, and that no error was committed in overruling the demurrer. The sufficiency of the indictment is challenged upon the ground that it does not appear from the alleged false matter that the testimony set out was material to any issue before the court.

It is now well settled by the weight of modern author-

ity that the materiality need not be made to appear, other than by an express allegation that said matters were material to the question to be determined. This indictment expressly avers the materiality of the alleged false testimony, and is sufficient. (*Rich v. U. S.* 1 Okla. 354, 33 Pac. 804; *Stanley v. U. S.* 1 Okla. 336, 33 Pac. 1025; *Territory v. Lockhart,* [N. M.] 45 Pac. 1106; *People v. Von Tiedeman,* 120 Cal. 128, 52 Pac. 155; *State v. Sutton,* 147 Ind. 158, 46 N. E. 468; *Shaffer v. State,* 39 Ala. 313.)

The defendant made an application for change of venue from the county, and supported same by the affidavits of a number of persons. The court, on application of the county attorney, permitted him to orally examine the persons who made these affidavits before the court, in reference to their knowledge of the matters contained in their several affidavits, and, after hearing this evidence, the court overruled the application for change of venue. This ruling of the court it is claimed, was erroneous. After an examination of the affidavits and the testimony submitted to the court, we cannot say that there was such a flagrant abuse of discretion as to warrant this court in setting aside the action of the trial court. The statute provides that in such cases the court may, in its discretion, award or refuse the change. Where, as in this case, the matter is left to the discretion of the trial court, an appellate court will not reverse the action of the trial court unless it is clearly apparent that there has been such a flagrant abuse of discretion as to amount to a denial of justice.

The statute (Statutes 1893) further provides, in the last clause of second sub-division of section 5138 that such order may be reviewed on appeal. After the court had

overruled the defendant's application for change of venue from the county, he demanded an appeal to the supreme court, and a stay of proceedings until his appeal could be heard. This the court denied, and he excepted. Counsel for plaintiff in error contend that the statute authorizes an appeal from an order overruling a motion for change of venue prior to the final judgment in the case,. and base such contention upon the proposition that in as much as, by the terms of another section of the statute, an appeal is allowed from a judgment of conviction in all criminal causes, as a matter of right, the provisions authorizing a review of an order granting or denying a change of venue would be nugatory and of no avail. We do not think this contention well founded. As a general rule, where a court is exercising purely discretionary powers, an appellate court will not interfere with its. action, and the purpose of the statute in authorizing a review of an order denying or granting an application for change of venue was to confer upon the appellate court the power to review such an order, and give to the party complaining of such ruling the right to have such order reviewed on an appeal; but the aggrieved party must wait until after final judgment, the same as in any other step of the trial, before he is entitled to his appeal.

On the trial of the cause, the official court stenographer, who took the evidence in the cause in which it was alleged the defendant gave the false testimony, was. sworn as a witness, and placed on the stand to prove what the testimony of the defendant had been in the former trial, and on which the charge of perjury was predicated; and after testifying that he was not able to remember the testimony, or when refreshed by an examina-

tion of the notes taken at the time, to state from memory, the testimony so given, he was permitted over the objection of the defendant, to read the testimony of the defendant, as taken by him in short hand at the time, and reduced to long hand. This is complained of as error. This presents an interesting question, and one which has not heretofore been determined by this court, but we do not regard it as a difficult or serious question. The law requires the best evidence that the case will admit of, to the exclusion of hearsay and secondary. Before we had advanced to that degree of proficiency and skill in recording the exact words and language as they fell from the lips of the speaker, by the system of signs and characters now in use, and recognized as accurate and indisputable, it was considered that the recollection of one who had heard the statements of another was the highest source and the most reliable authority to which we could appeal for a reproduction of such statements. But the constantly changing conditions occasioned by the rapid strides of advancement in intelligence, science, skill, mechanics, and inventive genius, as well as the development of physical capabilities, make necessary the application of old rules to a new order of things and to new conditions. That which furnished the best source for obtaining the truth 100 years ago is no longer the best. The rule does not change. The best evidence must be produced. But what is the best? Is it safer and more conducive to truth and accuracy to trust to the uncertainties of human recollection, rather than to rely upon the notes or manuscript of the skilled and expert stenographer, who could have no purpose or object in giving color or emphasis to that which he has heard and accu-

rately recorded at the time it was spoken? Surely it would be doing violence to no established rule of evidence to hold that the stenographic notes or long hand manuscript, as transcribed from the notes of the official court reporter, are better evidence, more reliable, more accurate, and entitled to more credit, than the recollection or memory of any person, however disinterested or truthful he might be. Our statute (section 1586, Statutes 1893) makes the long hand transcript of the reporter's notes, taken in any case, and filed with the clerk, when duly certified as correct by the reporter who took the testimony, admissible as evidence in all cases, with like force and effect as testimony taken in the cause by depositions. This statute evidently establishes a rule in civil cases, and in some instances, probably, in the trial of criminal causes. But the defendant in a criminal cause is entitled to be confronted by the witnesses who testify against him, and ordinarily depositions cannot be used against him except in cases where he has had opportunity to be present at the taking of same, and to fully cross-examine the witness whose testimony is offered by deposition. Hence, when questions arise like the one now under consideration, where it becomes necessary to prove what the testimony of the accused was in another trial, to which he was not a party, this statute does not control; and the stenographer who took the testimony may be sworn as a witness, and after testifying to the fact that he took the testimony at the time it was given, that he correctly recorded it in short hand, and that he has correctly transcribed the same into long hand, may read the testimony from either the short hand notes, or the long hand manuscript, and he will be subject to cross-

examination as to the correctness of his notes, the ac-curacy of his system of stenography, the identity of party,. and as to the matter contained in the notes or manu-script, as well as any other facts relating to the matter testified to by him. The fact that the stenographer has. no independent recollection of the testimony, after read-ing his notes, will not preclude him from giving to the jury what he knew to have been correctly done at the time it was performed. This question was ably discussed and well considered in the case of *Wright v. Wright*, 50 Pac. 444, by the supreme court of Kansas, and. a like conclusion reached. The same result is announced,. though placed on slightly different grounds in the fol-lowing cases: *State v. Smith*, 99 Iowa, 26, 68 N. W. 423;. *Rounds v. State*, 57 Wis. 45, 14 N. W. 865; Underh. E *r.*. sec. 124

On the trial of the cause the court gave the jury, among. others, the following instruction:

4. "The clerk of the district court is, under the law,. as is also the deputy clerk of said court, a qualified officer,. empowered and authorized to administer an oath in any cause in the district court, wherein a defendant is being tried upon indictment, charged with the commission of crime. The indictment in this case, charges that the oath was administered by J. H. Havighorst, clerk of the district court; and you are instructed in cases of perjury, where the perjury is charged to have been committed in a district court, it is sufficient to show that the oath was. administered by any officer of the court authorized so to do, or that the defendant testified and gave his testi-mony as under oath, or, if the question be in doubt as to what particular officer administered the oath, it is proper to show that it was administered by any officer author-ized so to do."

This instruction was clearly erroneous, and misleading to the jury. The specific averment is made in the indictment that the oath was administered by J. H. Havighorst, clerk of the district court. This is a matter of substance and must be proved as charged. On the trial of the cause, J. H. Havighorst was sworn as a witness, and testified that he had no recollection of having administered the oath to the defendant, but that he was present in court at the time the defendant testified, as was also his deputy, Mr. Glenn, and that either he or Mr. Glenn swore the witness, but he could not say which. There was other testimony of Mr. Glenn and the official reporter to the same effect. If the court had instructed the jury that the averment as to who, and what officer, administered the oath to the defendant, was a material averment, and must be proved as laid, and the jury had found the defendant guilty, we could not have disturbed the verdict on the weight of the evidence. But this was not done. The court told the jury that it was sufficient, under the averment of the indictment, to show that the oath was administered by any officer of the court. The learned judge who presided in the trial court evidently misapplied section 5234, Statutes of 1893. It is provided in this section that "in cases of perjury, where the perjury is charged to have been committed in the court, it shall be sufficient to show that the oath was administered by any officer of the court authorized so to do, or that the defendant testified and gave his testimony as under oath, or if the question be in doubt as to what particular officer administered the oath, it may be shown that it was administered by any officer authorized so to do." In our judgment, this statute does not establish

any new rule, but only announces an established rule. A district court consists of a judge, clerk, and other officers. A clerk is as necessary to a properly constituted district court as a judge, and it has been frequently held that what the clerk does in open court, in the presence of the judge, is the act of the court. At common law, it was necessary to allege the name and office of the person administering the oath, and a variance in this respect was fatal. (2 Whart. Cr. Law. 1287.) This rule is still adhered to in many of the states. But it has been held, under Codes similar to ours, that it is sufficient to allege the taking of an oath in the court, or before the court, and proof of taking the oath before any officer of the court, in the presence of the court, will sustain an allegation of being sworn by or before the court. (*Id.* 1287, 1315; *Campbell v. People,* 8 Wend. 636; *State v. Spencer,* 6 Or. 152.)

Swearing before a clerk in open court is equivalent to swearing before the court. (*Server v. State,* 2 Blackf. 35; *People v. Cohen,* [Cal.] 50 Pac. 20.)

Formerly, as now, where it was alleged in the indictment, in cases of perjury; that the accused was duly sworn in open court, or was duly sworn by or before the court, to testify and depose truthfully, etc., it was only necessary to prove that the oath was administered by the judge or some officer of the court in the presence of the court; and our statute only adopts this rule as a fixed rule of practice in this Territory, and it was not intended that the rule requiring specific averments to be proved as laid should be abolished or modified. Where the pleader elects to set out specifically the name of the person and officer before whom the oath was taken, he assumes the

burden of proving that the particular person or officer named administered the oath, and to prove that some other person or officer administered the oath is, under all the authorities, ancient and modern, a fatal variance; and the statute under consideration does not apply to such an indictment, but only to such as wherein the general averment is made that the accused was sworn in or by the court. For the error in giving this instruction, the cause must be reversed.

It is also contended that the court erred in the instructions defining the crime of perjury. Instruction No. 2 is as follows:

"You are instructed that, under the statutes of this Territory, every person, who, having taken an oath that he will testify, declare, depose, or certify truly, before any competent officer, upon the trial of a cause, such as that which is charged in the indictment, wilfully and contrary to such oath states any material matter, which he knows to be false, is guilty of perjury, and that an unqualified statement of that which one does not know to be true is equivalent to a statement of that which one knows to be false."

This instruction is copied from section 1995 of the crimes act, which declares that "an unqualified statement of that which one does not know to be true is equivalent to a statement of that which one knows to be false." This section is not intended to define the crime of perjury, but must be read in connection with section 1988, which defines the crime, and, when so read, is intended to include cases where a witness wilfully testifies to the truth of matters which he does not know to be true.

That the statement must be wilfully made, is as essen-

tial to the crime of perjury in the case of an unqualified statement of that which the witness does not know to be true, as in the case of a statement which he knows to be false. There can be no crime of perjury where the witness is honestly mistaken in his testimony, or the oath is according to the belief and conviction of the witness that it is true. The California Criminal Codes contain these same provisions in reference to the crime of perjury, and the same question was before the supreme court of that state in the case of *People v. Von Tiedeman*, 120 Cal. 128, 52 Pac. 155; and the court held that there could be no perjury in making an unqualified statement of that which one does not know to be true, unless the element of wilfullness entered into the act. We think that court correctly interpreted these statutes, and we have followed their construction. It follows that the court erred in giving instruction No. 2 in the form that it was given. This error was probably cured by other instructions, which fully covered this defect, and told the jury that there could be no conviction, under the charge contained in the indictment, unless they found, beyond a reasonable doubt, that the alleged false statements were made wilfully and corruptly, and with a design to mislead and deceive; but, in as much as the cause must be retried, we thought it best to determine this question, that it may not again mislead the trial judge.

There are numerous other alleged errors mentioned in the motion for new trial, but, as the cause must be reversed for error in the instruction numbered 4, we do not deem it necessary to further notice them. The judgment of the district court is reversed and a new trial ordered, and the defendant ordered to be delivered by

the warden of the penitentiary to the sheriff of Pawnee county; and said sheriff is directed to transport said prisoner from the penitentiary to the jail of his county and there confine him, until discharged by due process of law.

All of the Justices concurring.